# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| STEPHEN B. EARLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18CV155 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Stephen B. Earley, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 12 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 15, 17; see also Docket Entry 16 (Plaintiff's Brief); Docket Entry 18 (Defendant's Memorandum). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

---

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security on June 4, 2019, and he took the oath of office on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of November 1, 2006.  (Tr. 145-51.)  Upon denial of that application initially (Tr. 62-69, 78-81) and on reconsideration (Tr. 70-77, 84-87), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 91-92).  Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 26-61.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 10-21.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 9, 141-44), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

> 1.  [Plaintiff] last met the insured status requirements of the . . . Act on September 30, 2010.
>
> 2.  [Plaintiff] stated that he did not engage in substantial gainful activity during the period from his alleged onset date of November 1, 2006 through his date last insured of September 30, 2010.
>
> . . .
>
> 3.  Through the date last insured, [Plaintiff] had the following severe impairments: migraines and chronic pain syndrome.
>
> . . .
>
> 4.  Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met

or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.  . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] is limited to simple, routine, and repetitive tasks due to pain.

. . .

6.  Through the date last insured, [Plaintiff] was capable of performing past relevant work as a Dump Truck Driver. This work did not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . .

7.  [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from November 1, 2006, the alleged onset date, through September 30, 2010, the date last insured.

(Tr. 15-20 (internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Even given those limitations, the Court should remand this case for further administrative proceedings.

3

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to

4

whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro,

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

7

available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

## B. Assignment of Error

In Plaintiff's first and only issue on review, he argues that "[t]he ALJ's failure to account for [Plaintiff's moderate] limitations in concentration, persistence, and pace [('CPP')] by restricting the RFC to simple, routine and repetitive tasks [('SRRTs')] warrants remand" under Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). (Docket Entry 16 at 9 (bold font and single-spacing omitted).) Plaintiff maintains that, "[i]n Mascio, the [United States Court of Appeals for the] Fourth Circuit held that 'an ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work.'" (Id. (citing Mascio, 780 F.3d at 638).) According to Plaintiff, although the "Court has recognized that Mascio allows for the possibility that an ALJ can adequately explain why the mental RFC in question sufficiently encompasses a moderate limitation in [CPP]" (id. at 10 (citing Adams v. Colvin, No. 1:15CV673, 2016 WL 4007608 (M.D.N.C. July 26, 2016)

---

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

8

(unpublished), recommendation adopted, 2016 WL 6651324 (M.D.N.C. Nov. 10, 2016) (unpublished) (Osteen, Jr., C.J.), Wall v. Colvin, No. 1:15CV1089, 2016 WL 5360682 (M.D.N.C. Sept. 23, 2016) (unpublished), recommendation adopted, slip op. (M.D.N.C. Oct. 14, 2016) (Osteen, Jr., C.J.))), "in this case, however, the ALJ nowhere explains or supports his decision to restrict [Plaintiff] only to [SRRTs] despite his moderate limitations in [CPP]" (id.). Plaintiff's contentions have merit and warrant remand.

The Fourth Circuit has indeed held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain the decision . . . . An ALJ may account for a claimant's limitation with [CPP] by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added); see also Hutton v. Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced,"

because ALJ "gave abundant explanation" for why unskilled work adequately accounted for claimant's moderate limitation in CPP, by highlighting the claimant's daily activities and treating physicians' opinions).

Here, however, the ALJ's decision includes no such explanation as to why a limitation to SRRTs sufficiently accounts for Plaintiff's moderate limitation in CPP. At step three of the SEP, the ALJ provided the following analysis:

> Although [Plaintiff] does not have a severe mental impairment, the [ALJ] finds that, <u>due to pain, [Plaintiff] has significant impairments</u> in his ability to understand, remember, and apply information, as well as <u>in his ability to maintain [CPP]</u>. In making this finding, the [ALJ] has considered the "paragraph B" criteria that are normally associated with mental impairments . . . .
>
> The [ALJ] finds that, <u>due to pain, [Plaintiff]</u> had moderate limitation in understanding, remembering, or applying information; had mild limitation in interaction with others; <u>had moderate difficulty maintaining [CPP]</u>; and had mild limitation in adapting or managing oneself.

(Tr. 16 (emphasis added).) The ALJ tied Plaintiff's limitations in the mental areas of functioning to his pain rather than a mental impairment, but neither gave any further explanation of why Plaintiff's pain caused <u>mild</u> limitations in two functional areas and <u>moderate</u> limitations in two other areas, nor, specifically, why Plaintiff's pain caused <u>moderate</u>, as opposed to <u>mild</u>, <u>marked</u> or <u>extreme</u> limitations in CPP. (<u>See</u> <u>id.</u>)

10

The ALJ compounded his lack of explanation by noting, presumably as support for his findings in the mental areas of functioning, that "[n]o state agency psychological consultant concluded that a mental listing [wa]s medically equaled." (Id.) That statement, however, only tells half the story – no state agency psychological consultant, at either the initial or the reconsideration level of review, evaluated Plaintiff's abilities in the mental areas of functioning, because the single decision-maker at the initial level and the state agency medical consultant at the reconsideration level reviewed very limited evidence relating primarily to Plaintiff's benign pituitary cyst, noted that his pain management records pertained to time periods after Plaintiff's date last insured ("DLI") and, therefore, concluded that insufficient evidence existed to evaluate Plaintiff's claim (see Tr. 65-66, 72-74). The record before the ALJ, by contrast, contained many more records pre-dating Plaintiff's DLI detailing Plaintiff's intercostal neuralgia following a cholecystectomy and repeated trips to the pain clinic for a nerve block, narcotics, and multiple epidural steroid injections. (See Tr. 243-363.) Moreover, the ALJ later recognized that the state agency decision-makers lacked sufficient evidence to evaluate Plaintiff's claim and accorded their assessments "no weight." (Tr. 20 (emphasis added).)

Moreover, the ALJ did not discuss Plaintiff's concentration deficits at all in his RFC discussion. (See Tr. 17-20.) A

11

neighboring district court recently addressed similar circumstances:

> [W]hen viewing the decision as a whole, the ALJ fails to analyze how [the p]laintiff's perceived pain from her limitations affect her ability to concentrate. . . . [T]he ALJ based [the p]laintiff's moderate CPP limitation on her pain. . . .
>
> The ALJ did not just see a connection between [the p]laintiff's mental status and her concentration; he saw a connection with [the p]laintiff's pain as well. Nonetheless, the ALJ failed to analyze [the p]laintiff's pain in relation to her concentration and whether that pain warranted further limitations in the RFC. While the ALJ did find that [the p]laintiff's credibility was diminished in respect to the persistence or limiting effects of her symptoms, he did not discuss what pain was credible and what effect that pain, or the absence there of, had on [the p]laintiff's concentration. In the end, what was apparently enough to warrant finding a moderate limitation in CPP was never mentioned in the RFC analysis. The [c]ourt is left to guess that [the p]laintiff's pain did not affect her concentration. Because the [c]ourt cannot take part in such a guessing game, the lack of explanation warrants remand. Mascio, 780 F.3d at 638 ("Perhaps the ALJ can explain why [the claimant's] moderate limitation in [CPP] at step three does not translate into a limitation in [her RFC]. . . . But because the ALJ here gave no explanation, a remand is in order.")

Johnson v. Berryhill, No. 1:17-CV-00034-RJC, 2018 WL 1185510, at *4 (W.D.N.C. Mar. 7, 2018) (unpublished). In other words, the ALJ's decision does not provide a "logical bridge," Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000), between the ALJ's conclusion that Plaintiff suffered moderate concentration deficits and the ALJ's decision that Plaintiff could perform SRRTs in the work place, without any further concentration-related restriction.

Given these considerations, the ALJ's decision runs afoul of Mascio and requires remand.

### III. CONCLUSION

Plaintiff has established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings as to why, for purposes of establishing an RFC, restricting Plaintiff to SRRTs adequately accounts for his moderate limitation in CPP (or, alternatively, whether additional restrictions should apply and/or whether jobs that can accommodate any such additional restrictions exist in substantial numbers. As a result, Defendant's Motion for Judgment on the Pleadings (Docket Entry 17) should be denied and Plaintiff's Motion for Summary Judgment Remanding for Rehearing the Commissioner's Final Administrative Decision (Docket Entry 15) should be granted.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 5, 2019